## BOWLES, Price Administrator, Office of Price Administration, v. LUBOIL HEAT & POWER CORPORATION.

### No. 3789.

District Court, E. D. New York.

May 31, 1944.

John D. Masterton, Chief Enforcement Atty., O.P.A., of Newark, N. J. (Helen E. Cottrell, of New York City, of counsel), for plaintiff.

---

[1] No opinion for publication.

704

M. Mac Schwebel, of New York City, for defendant.

BYERS, District Judge.

Hearing on motion for a temporary injunction in an action for final injunction.

At the hearing which was on the return of an order to show cause, reference was had to the complaint and in addition affidavits were filed by Albert L. Colloms, Albert C. Cornish, and James C. Monaghan, all verified April 20, 1944.

The motion was adjourned by consent until May 24, 1944.

The complaint alleges jurisdictional matters and Ration Order No. 11, and avers that the defendant is a dealer in fuel oil within the meaning of that order.

It is alleged that commencing July 1, 1943, the Office of Price Administration issued to consumers fuel oil rations called coupon rations, the scope and purpose of which are set forth, as are the manner in which such coupons are to be handled by the dealer to whom the consumer delivered them in connection with the purchase of fuel oil.

It is alleged that commencing on or about January 15, 1944, the defendant detached coupons from consumer rations, deposited them in its ration bank account, and made deliveries of fuel oil "to certain consumers otherwise than permitted by, and in violation of, Ration Order No. 11", in the following particulars:

(a) It detached period 4 coupons prior to the valid dates thereof without making contemporaneous delivery to the consumer.

(b) It detached coupons without making contemporaneous delivery of fuel oil corresponding therewith.

(c) It transferred fuel oil to consumers without contemporaneously receiving in exchange therefor valid ration coupons of the required value.

(d) It deposited in its ration bank account detached coupons contrary to the regulations.

An injunction is sought to forbid:

a. Detaching fuel oil coupons from consumer rations prior to the valid date thereof.

b. Detaching such coupons prior to transfers of fuel oil.

c. Depositing in its ration bank account any coupons prior to their valid date and any coupons as to which there has been no prior delivery.

d. Transferring fuel oil to any consumer without contemporaneously receiving in exchange therefor "or at the time otherwise specified under Ration Order No. 11", ration coupons valid when issued for the required amount of fuel oil.

The affidavit of Colloms asserts that he is the head of the Enforcement Unit in the plaintiff's office, and "I have personally come in contact with the violations mentioned in the supporting affidavit of Albert C. Cornish". Then follows an argumentative statement that the violations tend to defeat the ration program. It is next averred:

"5. So long as the defendant continues to engage in said acts and practices, any final judgment that this Court may render in determination of this cause would be to that extent of no effect."

The affidavit of Cornish recites that he has examined the affidavit of Monaghan and it contains reasons why the practices attributed therein to the defendant tend to defeat the ration program.

Reference is made to something called "pre-tailoring". This expression, original to these papers, is artificial and uncouth, and unnecessarily mutilates the English language. What is meant is that ration coupons are detached, as indeed they must be at some time or other, in order that a consumer may purchase fuel oil. The precise instant of time at which this should be done seems to call for the exercise of common sense in view of the reasonable requirements of the distribution of this necessary commodity. The statements in this affidavit that the premature detachment of coupons may be the source of defeating the necessary object of the fuel rationing program are accepted at their face value, and it is not too much to require that all who are engaged in the distribution of fuel oil may be reasonably required to adhere closely to the requirements of the regulations covering that subject.

The defendant's alleged specific offenses must be sought for, however, in the Monaghan affidavit, which is circumstantial, and alleges that on March 2, 1944, he investigated the ration bank account of this defendant, and examined 27 gummed coupon sheets deposited by it in its ration bank account, and that such sheets show:

1. That the defendant accepted coupons from consumers prior to their valid dates, and transferred fuel oil in exchange therefor, likewise in advance of the date of validity.

2. That the defendant's deposit with its ration bank shows that the coupons were transferred improperly prior to their date of validity, and that the ration credit was thus obtained for invalid coupons, to the extent of 51,690 (presumably the figures refer to gallons).

3. That examination of customers' coupons sheets which had been deposited with the defendant by its customers "in accordance with the Fuel Oil Rationing Regulations" revealed "that all period 4 and period 5 coupons had been deducted prior to their valid dates * * *. The defendant, further, had delivered 3,353 gallons of fuel oil to five of its customers in excess of the lawful ration issued to these customers by the local War Price and Rationing Board."

The only paper thus far filed by the defendant is an affidavit of its president, verified May 16, 1944, from which it appears that the delivery of coupon sheets of customers to dealers in fuel oil was brought about as the result of requests of the Office of Price Administration. The affidavit states:

"* * * Due to the war the defendant's office staff was considerably reduced and defendant has had difficulty in keeping up with its work to some reasonable degree. In the small amount of spare time that the defendant's bookkeeper has the customers' coupons for the various periods are clipped from the coupon sheet and affixed to the gummed coupon sheets, awaiting their future delivery to the ration bank account of the defendant. At the same time the amount of customers' coupons which defendant holds, and their valid periods are set up on the defendant's books, so that the customer will not receive fuel oil unless he has a sufficient amount of coupons on deposit for the period during which the oil is to be delivered. From my own knowledge this practice has been followed by practically every fuel oil dealer within the City of New York.

"4. The sections to which plaintiff refers in Ration Order 11 cover the basic situation prohibiting the delivery of fuel oil to a customer without coupons. *This was not done by the defendant*, nor, as I read the papers of the plaintiff in this action, has the defendant been charged with committing any such offense. The only offense charged is covered by the word "pretailoring"; that is, the cutting of the coupons as above set forth." (Italics supplied.)

It will be seen that the foregoing quotation fails to refer in terms to the Monaghan charge as to 3,353 gallons, but the denial thereof is unmistakable in the foregoing and in what follows:

"5. The specific sections referred to in the complaint and moving papers of the plaintiff cover 'transfers' of fuel oil in violation of the regulations. A transfer is the sale or delivery of fuel oil to a customer, and that has been the general meaning and understanding of such term in the fuel oil industry. Coupons may have been cut as above outlined, *but at no time was there any prohibited 'transfer' of fuel oil in violation of Ration Order 11.*" (Italics supplied.)

The affidavit points out that the issuance of an injunction will cause irreparable damage and injury to the reputation of the defendant, as it will tend to identify the defendant with "black market" operations, with which it is asserted the defendant has had no connection.

The affidavit continues:

"* * * an order against this defendant without having a fair trial on the charges set forth in the complaint will definitely brand the defendant with such violation, will be picked up by the newspapers who will publish it and will cause irreparable injury to the defendant."

In view of the denial thus made of the plaintiff's charges, I should suppose that it would be clear that no injunction should be issued until the facts can be determined, but the attitude of the plaintiff, as stated in its brief on the motion, is to the effect that his allegations of fact should be accepted, and that, in spite of the defendant's denial, the Office of Price Administration should not be called upon to go to the trouble of proving its assertions. Thus:

"For the Office of Price Administration to be obligated to show that the ration credit was used prior to the issuance of an injunction restraining future unlawful deposits would place an intolerable burden of proof which would be difficult if not impossible to meet. It would necessitate the complete checking of a fuel oil dealer's ration bank account to determine whether ration credit obtained against invalid evidences had been used to procure fuel oil

706

from its supplier. With a limited investigation staff, this burden of proof could be met in very few cases and the Office of Price Administration instead of checking the compliance of many dealers in the industry would be limited to a few isolated cases where complete and thorough investigations could be made."

It should be clear that the court cannot judicially declare without proof that the statements of fact contained in the defendant's affidavit are untrue, and that a violation of law or regulation, or both, has indeed been practiced by it.

It is the duty of the court not to issue its injunctive process in the absence of evidence indicating necessity therefor, and it comes with rather a shock to those who entertain traditional views concerning the place which courts of law occupy in our scheme of government, to give serious consideration to the quoted assertions, which mean that the plaintiff should be excused from the task which is difficult and perhaps impossible, of demonstrating the truth of the facts stated in his own moving papers.

Even in this day and generation, a defendant is entitled to his day in court.

There need be no delay in the trial of this action, which can be had at the next Term, commencing June 7, 1944; pending the outcome of such trial, no necessity for a temporary injunction appears.

The motion therefore will be denied, upon condition that the defendant forthwith file its answer, together with a written stipulation that the cause may be noticed for trial at the Non-jury Term of this Court commencing June 7, 1944, and that the defendant will be ready when the cause is reached. Otherwise the motion will be granted.

Settle order.